UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE A. MARCHANT,<br><br>                    Plaintiff,<br><br>      v.<br><br>WARDEN TIM RICHARDSON;<br>DEWAYNE SHEDD; and<br>ATTORNEY DAVID SMETHERS,<br><br>                    Defendant. | Case No. 1:22-cv-00021-BLW<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Bruce A. Marchant's

Complaint as a result of Plaintiff's status as an inmate and in forma pauperis

request. The Court now reviews the Complaint to determine whether it should be

summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A.

Having reviewed the record, and otherwise being fully informed, the Court enters

the following Order directing Plaintiff to file an amended complaint if Plaintiff

intends to proceed.

## 1.      Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern

pleading standards, Rule 8 requires a complaint to "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

§§ 1915 & 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. §§ 1915(e)(2) & 1915A.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend). Moreover, even if a complaint meets the pleading requirements, dismissal under §§ 1915 and 1915A is still appropriate if an affirmative defense, such as untimeliness, is an "obvious bar to securing relief on

the face of the complaint." *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction, currently incarcerated at the Idaho Maximum Security Institution ("IMSI"). Plaintiff claims that, when he was first placed in the Ada County Jail, in 2016, unidentified jail deputies confiscated his Bible.

Plaintiff also claims that, in late 2019 or early 2020, Defendant Shedd, the IMSI paralegal, shredded several documents that Plaintiff planned to file with the courts. Plaintiff states that these documents were civil rights complaints and habeas corpus petitions.

Finally, Plaintiff asserts several constitutional violations that allegedly occurred in his underlying criminal proceedings. Plaintiff was initially charged with kidnapping, rape, and first-degree murder. He pleaded guilty to first-degree murder in exchange for dismissal of the other charges. *See State v. Marchant*, Ada County Case No. CR01-16-41273, *docket available at* https://icourt.idaho.gov/ (accessed April 6, 2022). Plaintiff received a fixed life sentence. *See State v. Marchant*, No. 46139, 2019 WL 1057092 (Idaho Ct. App. Mar. 6, 2019) (unpublished).

Plaintiff names as Defendants the warden of the prison in which he is confined, former prison paralegal Shedd, and Plaintiff's criminal defense attorney.

## 3.   Discussion

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.   *Standards of Law Applicable to Plaintiff's Claims*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

**B.     Access-to-Courts Claims**

Prisoners have a right to access the courts under the First and Fourteenth Amendments. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, because the right of access to the courts is not an "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

To state a viable access-to-courts claim, a plaintiff must plausibly allege that he suffered an actual injury as a result of the defendant's actions. *Lewis*, 518 U.S. at 349. Actual injury may be manifest if the alleged denial of access "hindered [the plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [the defendants' actions] that he was unable even to file a complaint." *Id.* at 351.

The Constitution does not require that inmates "be able to conduct generalized research," nor does it "guarantee inmates the wherewithal to transform themselves into litigating engines." *Id.* at 355, 360. Rather, the right of access to the courts requires only that inmates "be able to *present* their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360 (emphasis added). Moreover, a plaintiff

cannot state an access to courts claim by alleging that a negligent act by a
government official caused the actual injury of which the plaintiff complains. *Krug
v. Lewis*, 852 F.2d 571 (Table), 1988 WL 74699, *1 (9th Cir. July 6, 1988)
("While prisoners have a due process right of access to the courts, the negligent act
of a public official does not violate that right.") (unpublished) (citing *Daniels*, 474
U.S. at 333).

The right of access to the courts is limited and applies only to direct appeals
from convictions for which the inmates are incarcerated, habeas petitions, and civil
rights actions regarding prison conditions. *Lewis*, 518 U.S. at 354-55; *Silva v. Di
Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) ("[P]risoners have a right under the
First and Fourteenth Amendments to litigate claims challenging their sentences or
the conditions of their confinement to conclusion without active interference by
prison officials.") (emphasis omitted), *abrogated on other grounds by Coleman v.
Tollefson*, 135 S. Ct. 1759 (2015). "Impairment of any other litigating capacity is
simply one of the incidental (and perfectly constitutional) consequences of
conviction and incarceration." *Lewis*, 518 U.S. at 355 (emphasis omitted).

Claims of denial of access to the courts may arise from the frustration or
hindrance of "a litigating opportunity yet to be gained" (a forward-looking access
claim) or from the loss of a suit that now cannot be pursued (a backward-looking
access claim). *Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002). A complaint

alleging a denial of access to the courts must plausibly allege that the plaintiff suffered, or will suffer, the loss of a past or present litigating opportunity.

The plaintiff must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation activities; (2) the loss (or expected loss) of a "nonfrivolous" or "arguable" underlying claim that must be set forth in the federal complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) that the remedy sought through the access to courts claim is not otherwise available in another suit that could be brought. *Id.* at 415-17. "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id*. at 415.

A prisoner asserting an access to courts claim must also allege facts showing that the alleged violation of his rights was proximately caused by a state actor. *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, *Hust v. Phillips*, 550 U.S. 1150 (2009); *see also Crumpton*, 947 F.2d at 1420. The proximate cause analysis focuses on whether it was foreseeable that the state actor's conduct would result in a deprivation of the prisoner's right of access to the courts. *Phillips*, 477 F. 3d at 1077 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 784-85 (9th Cir. 2000)).

Plaintiff alleges only that, in late 2019 or early 2020, Shedd shredded three civil rights complaints and three habeas corpus petitions that Plaintiff was attempting to file. *Compl*. at 2, 8, 13. Plaintiff has not alleged anything about the causes of action that he was allegedly frustrated from pursuing—which "is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415. Accordingly, Plaintiff has not plausibly alleged that he suffered an actual injury to his right of access by being deprived of the opportunity to pursue an arguable underlying claim. Plaintiff may attempt to remedy these deficiencies in an amended complaint.

### C.    *Potential Religious Claims*

Plaintiff does not specifically assert any claims of violations of his religious freedom. *See Compl*. at 7–9 ("Cause of Action" section). However, potential religious claims may be implicated by the allegation that officers confiscated his Bible upon his arrest and detention in the Ada County Jail.

The Free Exercise Clause of the First Amendment absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, the burden placed on the inmate's religious exercise by the defendants' actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—meaning minor or minimal—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing Muslim inmates on

work detail to return to the prison to attend Jumu'ah, a group worship service, did

not violate the Constitution).

So long as a restriction on an inmate's religious practice "is reasonably

related to legitimate penological interests," that restriction will withstand First

Amendment scrutiny. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be

considered in this reasonableness inquiry include (1) whether there is a logical

connection between the governmental interest and the particular policy or decision

at issue; (2) whether "alternative means of exercising the right remain open to

prison inmates"; (3) the impact that accommodating a prisoner's religious practice

would have on "other inmates, on prison personnel, and on allocation of prison

resources generally"; and (4) whether there is an absence of "obvious, easy

alternatives to the policy adopted by" prison officials. *O'Lone*, 482 U.S. at 350–53

(internal quotation marks and alterations omitted). Courts must take care to avoid

"substitut[ing] [their] judgment on difficult and sensitive matters of institutional

administration." *Id*. at 353 (internal quotation marks and alteration omitted).

A prison's occasional failure to accommodate a religious practice does not

violate the Free Exercise Clause where there is no evidence that the failures were

caused by "anything other than institutional shortage." *Id.* Similarly, a temporary

delay in accommodating religious practice does not violate the First Amendment

when caused by ordinary administrative or institutional delay. *See Tapp v. Stanley*,

2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (unpublished) (holding that a 3-month delay in providing a prisoner with a religious meal did not substantially burden the prisoner's sincerely-held religious beliefs where the delay was "caused by ordinary administrative delay").

The First Amendment is not the only source of religious protection within a jail or prison. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

RLUIPA applies to entities receiving federal financial assistance. *Id*. at (b)(1). By accepting federal funds, however, states do not waive sovereign immunity to suits for money damages under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011). Further, although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902-04 (9th Cir. 2014).

An inmate asserting a claim under RLUIPA must plausibly allege that the governmental action constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). For an official's action to constitute a substantial burden on an inmate's religious exercise, it "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

If the inmate establishes "the prima facie existence" of a substantial burden on the exercise of the inmate's religion, then the burden shifts to prison officials "to prove that [the] substantial burden on [the inmate's] exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

As the Supreme Court has explained,

> The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion

> by the objecting party. If a less restrictive means is
> available for the Government to achieve its goals, the
> Government must use it.

*Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015) (internal citations, quotation marks,

and alterations omitted). A jail or a department of correction "cannot meet its

burden to prove least restrictive means unless it demonstrates that it has actually

considered and rejected the efficacy of less restrictive measures before adopting

the challenged practice." *Warsoldier*, 418 F.3d at 999.

Although RLUIPA is to be construed broadly in favor of protecting an

inmate's religious rights, *id*., the statute does not "elevate accommodation of

religious observances over an institution's need to maintain order and safety,"

*Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). A prisoner's requests for religious

accommodation must not override other significant interests within a prison

setting. "Should inmate requests for religious accommodations become excessive,

impose unjustified burdens on other institutionalized persons, or jeopardize the

effective functioning of an institution, the facility would be free to resist the

imposition." *Cutter*, 544 U.S. at 726. In the words of the Supreme Court, "context

matters." *Id*. at 723 (quotation marks and alteration omitted).

Plaintiff does not state for how long he was deprived of a Bible or allege any

other details about this event, so a reasonable factfinder could not infer that the

lack of access to a Bible constituted a substantial burden on Plaintiff's religious

exercise. The Complaint also does not identify a single defendant who allegedly denied him access to a Bible. For these reasons, the Complaint fails to state a plausible claim under the Free Exercise Clause or under RLUIPA.

Any religious claims asserted by Plaintiff also appear to be untimely. Plaintiff asserts that his Bible was confiscated "when [he] arrived at the Ada County jail." *Compl*. at 6. Plaintiff arrived at the jail in December 2016, more than six years before he filed the instant action. *Id*. at 7.

The limitations period for filing a § 1983 action in Idaho is two years. Idaho Code § 5-219; *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Though state law governs the limitations period for filing a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he still may file a lawsuit beyond the limitations deadline if he

can show that the statute should have been tolled (or paused) for a certain period of time during the deadline period within which he should have filed the lawsuit. Pursuant to the PLRA, the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

In addition to tolling under the PLRA, state tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975); *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho.[2] *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

---

[2] The doctrine of equitable estoppel, however, *is* available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc*., 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id.*

### D.   Claims Challenging Plaintiff's Criminal Conviction or Sentence

Plaintiff also appears to assert the following claims: (1) a Fifth Amendment claim that investigating officers violated *Miranda v. Arizona*, 384 U.S. 436 (1966) by failing to inform Plaintiff of his right to remain silent and to speak with an attorney; (2) an Eighth claim that his sentence is excessive; and (3) a Sixth Amendment claim of ineffective assistance of counsel. These claims call into question the validity of Plaintiff's criminal conviction and sentence and, consequently, appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid." *Id*. at 486–87. Thus, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the

invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Further, the Supreme Court has made it clear that when a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from ...  imprisonment, his sole federal remedy is a writ of habeas corpus."[3] *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, release from incarceration is not an available remedy under § 1983.

If Plaintiff files an amended complaint, he should either (1) omit any claims challenging the fact or duration of his incarceration or (2) explain why he believes any such claims are not *Heck*-barred.

### E.    *Claims Against Attorney Smethers*

Plaintiff's claims against David Smethers, his criminal defense attorney, are implausible for the additional reason that Smethers is not a state actor. Section 1983 provides a remedy for constitutional or statutory violations of persons acting *under color of state law*, and "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). This is because "it is the constitutional obligation of the State to respect the professional

---

[3] Plaintiff currently has a habeas corpus case pending in this Court. *See Marchant v. Davis*, Case No. 1:21-cv-00082-DCN.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 19

independence of the public defenders whom it engages," and because a public defender "best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing the undivided interests of his client." *Id.* at 318–19, 321–22 (internal quotation marks omitted). Indeed, "a public defender is not acting on behalf of the State; he is the State's *adversary*." *Id.* at 322 n.13 (emphasis added).

Accordingly, Plaintiff's defense attorney is not a state actor under § 1983, and Plaintiff should omit Attorney Smethers from any amended complaint.

### 4.    Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor

does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying all elements of an access-to-courts claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint

supersedes the original, the latter being treated thereafter as non-existent."),
*overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896,
(9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*.,
896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by
entering judgment against a party named in the initial complaint, but not in the
amended complaint).

Plaintiff must set forth each different factual allegation in a separate
numbered paragraph. The amended complaint must be legibly written or typed in
its entirety, and it should be clearly designated as an "Amended Complaint."
Plaintiff's name and address should be clearly printed at the top left corner of the
first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to
Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if
the amendment does not comply with Rule 8, this case may be dismissed without
further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a
litigant knowingly and repeatedly refuses to conform his pleadings to the
requirements of the Federal Rules, it is reasonable to conclude that the litigant
simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.      The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file an amended complaint as described above. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[4]

2.      If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon relief may be granted, for failure to prosecute, or for failure to comply with a Court order. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); Fed. R. Civ. P. 41(b).

DATED: June 3, 2022

_____
B. Lynn Winmill
U.S. District Court Judge

---

[4] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).